UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROGER HEINS and MARIE HEINS,
husband and wife,

    Plaintiffs,

v.     Case No. 2:05-cv-00291
       HON. R. ALLAN EDGAR

DREW DUST,

    Defendant.
_____/

**MEMORANDUM**

Plaintiffs Roger Heins and Marie Heins, residents of Wisconsin, bring this action against Defendant Drew Dust, an Illinois resident, for negligence and violation of the Michigan Ski Area Safety Act ("SASA"), Mich. Comp. Laws. §§ 408.321 *et seq*. This Court has jurisdiction based on the diversity of citizenship of the parties and because the amount in controversy exceeds seventy-five thousand dollars. 28 U.S.C. § 1332.

Defendant moves for summary judgment on plaintiffs' negligence claims. [Court Doc. No. 52]. Plaintiffs oppose the motion for summary judgment. [Court Doc. No. 55]. After reviewing the record in the light most favorable to Plaintiffs, the Court concludes that Defendant's motion will be **DENIED**.

**I.     Background**

The record demonstrates the following facts. On January 6, 2003 Plaintiff Roger Heins was skiing with his brother, Emil Heins, at Big Powderhorn Mountain near Bessemer, Michigan. Defendant Dust was also skiing on that day with his father and his brother. Plaintiffs' complaint alleges that Defendant Dust rode a snowboard down Bovidae run "at a high speed exceeding his

ability to control his snowboard to avoid a collision with other riders and skiers lawfully on the slope." *Id.* Plaintiffs allege that Drew Dust failed to slow and failed to yield to skiers below him waiting in the ski lift line. *Id.* The complaint asserts that Dust hit Roger Heins throwing Heins off of his skis and "fracturing his rib and clavicle, tearing and spraining his supraspinatus, rotator cuff and associated connective tissues and causing disability and loss of use of his right arm . . . ." *Id.*

The record contains an incident report dated January 6, 2003. [Court Doc. No. 53-9]. The report asserts that the location of the accident was at the bottom of Bovidae run. The report also indicates that Mr. Heins was 67 years old at the time of the accident and that the accident occurred on packed powder under clear conditions. *Id.* The report states that Mr. Heins was hit on his back left side on the Bovidae run. The second page of the incident report pinpoints the areas of Mr. Heins' bodily injuries as the nose, the clavicle area, the upper right shoulder and chest area, and the right palm.

Earl Halverson, the ski patrol director for Big Powderhorn Mountain, filled in a narrative on the second page of the incident report. [Court Doc. No. 53-8, Deposition of Earl Halverson ("Halverson Dep."), p. 17; Court Doc. No. 53-9]. The narrative states in part, "[c]alled to attend a 67 year old male complaining of right shoulder, chest pain following collision on flat below Bovidae head wall. Denies loss of consciousness. Skier in from right side. Believes other skier to be a boarder. . . ." Halverson Dep., p. 17.

In his deposition Mr. Heins explained that he is an experienced skier who has been skiing for about 40 years. [Court Doc. No. 53-6, Deposition of Roger A. Heins ("Heins Dep."), p. 23]. Mr. Heins also testified that he is a ski patroller. *Id.* at 24. Mr. Heins was skiing ahead of his

brother down the Cannonball trail, a black diamond trail, or the most difficult category of ski slope. Heins Dep., p. 45. A trail map in the record indicates that several trails merge at the bottom of part of the mountain, including the Trigger trail at the far left, the Cannonball trail, in the middle, and the Bovidae trail, at the far right. Trigger is designated as a green ski slope, or the easiest kind of trail. [Court Doc. No. 53-4].

> Mr. Heins described his recollection of the accident in this way:
>
> It was on the flat. The slope, there was no pitch to the slope, it was a flat flat, and I was just heading for the lift, just going straight at the lift, feeling my momentum to go get to the lift and I saw a tip of a snowboard like about like that and then the next thing I was just (indicating.) I never saw the person or anything, just (indicating.) It was just pure pain.

Heins Dep., p. 31. In response to the question of whether he knew what became of the person who struck him, Mr. Heins testified, "I'm pretty sure he was standing there because I heard somebody say twice, 'I'm sorry.' I distinctly remember that, because when the ski patrol come [sic] they told the kid, 'Don't you leave.'" *Id.* Mr. Heins agreed that he was hit from the left side. *Id.* at 32. Mr. Heins never saw anyone identify himself as the father of the individual who struck him. *Id.* at 34. Mr. Heins agreed that it was "[n]ot possible" that he was hit by a skier. *Id.* at 36. He asserted that "from what I remember laying on my back and looking over my head, there was a kid standing there with a board next to him." *Id.* at 36-37.

During his deposition Mr. Heins even had an explanation for why the person who collided with him could not have been wearing skis: "I see [snowboarders] enough on the hills. Their feet are–you're facing one direction and they're looking this way, okay, so when he's making a turn going this way he don't [sic] know what's over there. He can't see." Heins Dep., p. 52. Whereas, Mr. Heins testified, if the person had been on skis, "[t]here's no way he would

have missed me." *Id.* Mr. Heins is unlikely to confuse skis and a snowboard, believes he saw a snowboard, and agrees that skis and snowboards are "[c]ompletely different animals." *Id.* at 62. Mr. Heins never saw the actual person who hit him, and he does not know of any other witnesses. *Id.* at 62, 65. He cannot identify who struck him. *Id.* at 65. Mr. Heins' brother, Emil Heins, testified that he did not witness the accident, but skied down the slope after his brother and recognized his brother lying on the ground. [Court Doc. No. 53-7, Deposition of Emil Heins, pp. 5-9]. Emil Heins remembered seeing three teenagers at the sight of the accident, who were all on snowboards. *Id.* at 9-10.

     Mr. Heins also testified that the way the snowboarder hit him on his left side, the person with whom he collided could not have been riding down the Trigger slope. *Id.* at 59. The individual hit Mr. Heins in his left shoulder, and Mr. Heins fell onto his right shoulder. *Id.* at 32, 61. The complaint alleges that Drew Dust was the snowboarder who collided with Mr. Heins.

     Defendant's version of the events is strikingly different from Mr. Heins' version. The record reveals that Defendant rented skis at the Big Powderhorn Mt. Rental Shop. [Court Doc. No. 53-3]. Mr. Dust's father, Dr. Eugene Dust, testified that he and his sons were only "average" skiers who were not very good at skiing and were really beginners. [Court Doc. No. 53-2, Deposition of Eugene Dust ("E. Dust Dep."), pp. 6-8]. Eugene Dust testified that immediately before the accident occurred, he and his two sons were skiing down Trigger, a green ski slope to the left of the Cannonball slope. *Id.* at 8. Dr. Dust testified that he was ahead of Drew Dust prior to the accident and that he witnessed Mr. Heins skiing into Drew Dust. *Id.* at 11. Dr. Dust testified that he saw what looked like Mr. Heins' right shoulder strike the back of Drew's left shoulder. *Id.* at 11-12. He stated, "[t]hat was it. Just the head and shoulder part is all I really

saw. I wasn't – I wasn't sure what exactly happened. It looked – it occurred as they were descending, and I thought, you know, what exactly happened here, but they did seem to jar before they disappeared." *Id.* at 12. Dr. Dust did not see any snowboarders or other skiers ski at a high rate of speed before Mr. Heins slammed into Drew Dust. *Id.* at 25. Dr. Dust testified that Drew Dust was using skis on January 6, 2003 and that he could not identify the individual involved in the accident with Drew as Mr. Heins. *Id.* at 26.

The incident report also contains a written note with Drew Dust's version of the events that transpired. His version states in full: "I was coming from the top of the hill watching for skiers below me when from off to the side and rear the man came down and struck me in the rear." [Court Doc. No. 53-9]. Drew Dust testified that he did not see Mr. Heins and that a person he assumes was Mr. Heins struck him on his left shoulder from behind. [Court Doc. No. 53-5, Deposition of Drew Dust ("D. Dust Dep."), pp. 12, 39]. He asserted in his deposition that "I was coming from the top of the hill watching for skiers below me when from the top left to the side and rear the man came down and struck me in the rear." *Id.* at 12. Drew Dust could only confirm that he saw "something out of the corner" of his eye prior to the collision, and he is not sure whether what he saw was Mr. Heins. *Id.* at 13. Drew Dust also did not recall whether any skiers or snowboarders were leaving the scene after Mr. Heins collided with him. *Id.* at 40.

**II.    Standard of Review**

The Court's jurisdiction in this action is based on diversity; therefore, the Court must apply federal procedural law and Michigan substantive law. This Court will apply the federal standard relating to a motion for summary judgment. *See Dolly v. Old Republic Ins. Co.*, 200 F.Supp.2d 823, 829 (N.D. Ohio 2002); *Gafford v. General Elec. Co.*, 997 F.2d 150, 165-66 (6th

Cir. 1993).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy*

*Street*, 822 F.2d at 1435-36.  If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment.  *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

**III.    Analysis**

The SASA governs the conduct of skiers in Michigan.  *See* Mich. Comp. Laws. §§ 408.321 *et seq*.  The SASA requires that:

> [a] skier shall conduct himself or herself within the limits of his or her individual ability and shall not act or ski in a manner that may contribute to his or her injury or to the injury of any other person.  A skier shall be the sole judge of his or her ability to negotiate a track, trail, or slope.

Mich. Comp. Laws § 408.341(1).  The SASA also contains an assumption-of-risk provision that states:

> (1) While in a ski area, each skier shall do all of the following:
> (a) Maintain reasonable control of his or her speed and course at all times.
> (b) Stay clear of snow-grooming vehicles and equipment in the ski area.
> (c) Heed all posted signs and warnings.
> (d) Ski only in ski areas which are marked as open for skiing on the trail board described in section 6a(e).
> (2) Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary.  Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

Mich. Comp. Laws § 408.342.  SASA also provides that a "skier or passenger who violates this act, . . . shall be liable for that portion of the loss resulting from that violation."  Mich. Comp. Laws § 408.344.

Michigan courts have recognized the inherent tension between a skier's duty under SASA not to contribute to an injury of another person and a skier's assumption of the inherent risks of skiing, including the risk of colliding with another skier. *See Rusnak v. Walker*, 273 Mich. App. 299, 729 N.W.2d 542 (Mich. Ct. App. 2006). In *Rusnak* the court analyzed the question of "whether the assumption-of-risk provision within the SASA bars plaintiff's claim that is based on a collision and resulting injuries alleged caused by defendant's violation of this act." *Id.* at 300, 729 N.W.2d at 544. The court determined that in reading the Mich. Comp. Laws §§ 408.341-408.342 together:

> the Legislature has provided a system whereby skiers assume the risk of injury from dangers inherent in skiing that are "obvious and necessary," but which also provides liability against a skier for any injuries that were caused by a violation of the duties imposed on skiers under the SASA. . . .
> The crux of this case is whether the broad assumption-of-risk subsection can be reconciled with the provisions (1) placing duties on skiers to ski safely and not injure another skier and (2) providing liability for injuries caused by those violations. As we have already noted, we hold that the SASA assumption-of-risk provision contains clear and unambiguous language, providing in no uncertain terms that a collision between skiers is an obvious and necessary danger that inheres in the sport of skiing. However, in those cases in which a plaintiff can establish that a defendant violated one of the specific duties imposed by the SASA, the plaintiff can still recover damages to the extent that the defendant's violations caused the plaintiff's injuries. To state it differently, it is possible, and therefore skiers assume the risk, that a collision can occur between skiers when neither skier is violating his or her duties under the SASA. That is, it is an obvious and necessary danger of skiing that sometimes accidents simply happen. But, again, if it can be shown that the collision resulted from a violation of the act, then the violater is to be held liable for the damage caused, as provided under MCL 408.344.

*Id.* at 304-05, 729 N.W.2d at 546.

Based on the Plaintiffs' allegations of negligence and Michigan courts' interpretation of the SASA, it appears that Defendant Dust may be liable to Mr. Heins for any loss or injury

resulting from a violation of Dust's duties under SASA not to contribute to the injury of another and not to ski beyond his capabilities. Defendant argues, however, that based on the record, including the ski rental form, Plaintiffs are suing the wrong person. Defendant claims that Mr. Heins' repeated affirmations that he was hit by a snowboarder confirm that there is no issue of fact that Drew Dust was the individual who collided with Mr. Heins. Dust claims that the evidence is clear that he was skiing on the day of the incident and that because no witnesses saw him collide with Mr. Heins, there is no genuine issue of material fact that he is responsible for Mr. Heins' injuries. Dust also contends that the evidence is undisputed that he was skiing down the Trigger run. Mr. Heins admitted in his deposition that the person who collided with him could not possibly have been skiing down the Trigger run.

      The Court concludes that Defendant's arguments, while appealing, rely too heavily upon Mr. Heins' possibly flawed memory and flawed perceptions and ignores other crucial facts in the record. For example, there is no evidence in the record that any other accident occurred on that day between other individuals at the confluence of the termination of the Trigger, Cannonball, and Bovidae runs. Defendant Dust admits that he was involved in a collision with another party. He wrote out a statement describing his version of the events that became affixed to the Heins incident report. Defendant's father admits that he witnessed an accident involving Drew and an older man who was injured enough to be lying on the ground in pain and angry. E. Dust Dep., p. 25. Although it is unclear precisely what happened during the incident and who hit whom, it is clear that both Mr. Heins and Drew Dust admit to being involved in an accident at the exact same time and in the same location. There is no evidence in the record that some other skier or snowboarder escaped from the scene following the collision. These events are more than

coincidences; they constitute evidence of a collision involving Mr. Heins and Drew Dust sufficient to withstand a motion for summary judgment.

The discrepancies in the facts are precisely what make this case appropriate for a jury trial. The material facts are highly disputed, and it is the essence of the jury's role to determine issues of credibility and resolve basic issues of fact, including whether Mr. Heins struck Drew Dust or whether Drew Dust struck Mr. Heins. Mr. Heins' recollection of being hit by a snowboarder coming down the Bovidae run is precisely the kind of evidence the jury must consider in weighing whether Drew Dust is liable for violation of the SASA. For these reasons, Defendant Dust's motion for summary judgment will be DENIED.

## IV. Conclusion

For the reasons stated *supra*, Defendant Dust's motion for summary judgment will be DENIED.

A separate order will enter.


Dated: June 8, 2007                    /s/ R. Allan Edgar
                                         R. ALLAN EDGAR
                                   UNITED STATES DISTRICT JUDGE